## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WACHOVIA SECURITIES, LLC,** | : | **CIVIL ACTION NO. 1:06-CV-1894** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT L. DURHAM** and | : | |
| **WILLIAM R. CASHMAN, III,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Presently before the court is plaintiff's emergency motion for a temporary restraining order and preliminary injunction.  For the reasons that follow, the court will grant plaintiff's motion.

### I.   Background

Defendants William R. Cashman, III ("Cashman") and Robert L. Durham ("Durham") are former employees of plaintiff Wachovia Securities, LLC ("Wachovia")  Each resigned from Wachovia on September 22, 2006 and now work for Morgan Stanley Dean Witter.  (Doc. 1, Ex. C; see also Doc. 1 ¶ 2; Doc. 7 ¶ 1.)

As a condition of his employment with Wachovia, Cashman executed a Registered Representative Agreement on September 8, 1998.  (See Doc. 1, Ex. A.)  Cashman's agreement contains the following provision:

> 12.     I am aware that I have or will have access to confidential and proprietary information and materials, including, but not limited to, material describing or relating to the business and financial affairs of FUBS [First Union Brokerage Services, Inc.] and its banking and other affiliates (collectively "First Union") and confidential information pertaining to First Union's

customers.  I agree and acknowledge that during and after my employment with FUBS, I will not disclose in any fashion any confidential and/or proprietary information about First Union or FUBS' business or customers obtained during or as a result of my employment.  I will hold all confidential and proprietary information and material in strict confidence and will not give, disclose, copy, reproduce, sell, assign, license[], market or transfer confidential and proprietary information and material to any person, firm, corporation or entity.  I will utilize any such information and materials only for the benefit of First Union and its customers, will not take any such documentation or information with me in whatever format.  All customer information is proprietary and must remain at First Union Brokerage Services should you choose to leave employment at FUBS.

(Doc. 1, Ex. A ¶ 12.)

As a condition of his employment with Wachovia, Durham executed a

Registered Representative Agreement on July 8, 2002.  (See Doc. 1, Ex. B.)

Durham's agreement contains the following provisions:

3.     The Employee agrees that all records (whether originals, copies or computerized) containing customer information, including, but not limited to names, addresses, and account information, are the proprietary information of Wachovia and will not be removed from the offices of Wachovia in any form . . . .

* * *

5.     Upon the termination of the Employee's employment (voluntary or involuntary), the Employee agrees that, for a period of one (1) year following the termination of employment, the Employee will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any customer whose account was serviced by the Employee, or whose name became known to the Employee, during his/her employment at Wachovia in any office and in any capacity. The Employee's agreement "not to solicit" means that the Employee will not, during his/her employment, and for a period of one (1) year thereafter accept business from, or initiate or have any contact or communication, of any kind whatsoever, for the purpose of inviting,

2

encouraging or requesting any customer to: (a) transfer their investment account; (b) open a new account with the Employee's new employer; (c) transact any business with; or (d) otherwise discontinue the customer's patronage and business relationship with Wachovia . . . .

* * *

6.  The Employee recognizes and acknowledges that Wachovia has a substantial interest in retaining its customers and protecting the confidential and proprietary information. Therefore, the Employee agrees that any breach of the foregoing provisions of this Agreement would constitute immediate and irreparable harm to Wachovia.

7.  In the event that the Employee violates, or is reasonably believed by Wachovia to be about to violate, any of the provisions of this Agreement, the Employee consents to the issuance by a court of competent jurisdiction, which as jurisdiction for the geographic location of the branch office(s) where the Employee was employed or where the Employee resides or the Employer conducts business, to a temporary restraining order and/or a preliminary or permanent injunction to prohibit the breach of any provision of this Agreement.

(Doc. 1, Ex. B ¶¶ 3, 5-7 (emphasis removed)).

On September 26, 2006, Wachovia commenced this action against Cashman and Durham alleging: (1) breach of contract, (2) conversion, (3) breach of fiduciary duty, and (4) unfair competition. (Doc. 1.) Wachovia bases these claims on defendants' alleged violations of the hereinabove described covenants in their employment contracts.

Along with the complaint, Wachovia filed a motion for a temporary restraining order and preliminary injunction to enforce the defendants' agreements and enjoin defendants from, *inter alia*, "soliciting any business from any clients of Wachovia whom Defendants served or whose name became known to Defendants

3

as a result of employment with Wachovia." (Doc. 2.)  In light of the request for

emergency relief in the form of temporary injunctive relief, the court immediately

conducted a hearing at which both parties were represented.

**II.   Discussion**

The requirements for preliminary injunctive relief are well settled.  The

moving party must establish that (1) there is a reasonable probability of success on

the merits, (2) irreparable injury will result without injunctive relief, (3) granting the

injunction will avoid a comparably greater injury than denying it, and (4) the

injunction is in the public interest.  See BP Chems., Ltd. v. Formosa Chem. & Fibre

Corp., 229 F.3d 254, 263 (3d Cir. 2000); Merrill Lynch, Pierce, Fenner & Smith, Inc.

v. Chamberlain, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001).  While each factor need

not be established beyond doubt, they must combine to show the immediate

necessity of injunctive relief.  See Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d

Cir. 2002); see also Walgreen Co. v. Sara Creek Prop. Co., 966 F.2d 273, 275-79 (7th

Cir. 1992) (Posner, J.); 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND

PROCEDURE § 2948.3 (3d ed. 1998).

**A.   Reasonable Probability of Success on the Merits**

To establish a reasonable probability of success on the merits, the moving

party must produce sufficient evidence to satisfy the essential elements of the

underlying cause of action.  See Punnett v. Carter, 621 F.2d 578, 582-83 (3d Cir.

1980).  Whether success is likely requires examination of the legal principles

controlling the claim and potential defenses available to the opposing party.  See

4

<u>BP Chems.</u>, 229 F.3d at 264.  However, the mere possibility that the claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action.  <u>Highmark, Inc. v. UPMC Health Plan, Inc.</u>, 276 F.3d 160, 173 (3d Cir. 2001) (citing 11A WRIGHT ET AL., <u>supra</u>, § 2948.3).

Based on the evidence presented thus far, the court finds that Wachovia has a reasonable likelihood of success on the merits.  Wachovia has presented evidence that suggests that defendants removed confidential information before resigning from Wachovia and are soliciting their former Wachovia clients.  (<u>See</u> Doc. 3 ¶¶ 5-7.) Specifically, the affidavit of David Lucy, senior vice president of Wachovia, states:

> After defendants resigned, I personally spoke with numerous former clients of defendants over the next few days.  Several of these former clients told me that they were aware that Defendants were leaving to work for Morgan Stanley in advance of Defendants' resignation from Wachovia.  In addition, several former clients told me that they were solicited by Defendants to leave Wachovia after their resignation on September 22, 2006.  Such solicitation is in direct contravention of the terms of Defendants' employment with Wachovia.
>
> * * *
>
> It is also my understanding that Defendants have removed between 75-100 "Envision Cash Flow" planning models from their offices before their resignation from Wachovia.  The Envision Cash Flow planning model contains extensive information regarding Wachovia clients including, but not limited to, contact information. This information is highly confidential and used extensively in practice by Wachovia brokers. . . .

(Doc. 3 ¶¶ 5, 7.)

5

Although Wachovia has demonstrated a reasonable likelihood of success on the merits, the court finds that the scope of Wachovia's requested relief is overly broad with respect to Cashman. Wachovia seeks to enjoin Cashman from soliciting former clients. However, his agreement with Wachovia, unlike Durham's agreement, contains no such restriction. Accordingly, any relief ordered must address the material differences in defendants' registered representative agreements.[1]

### B.     Irreparable Injury

Irreparable injury is harm of such an irreversible character that prospective judgment following trial would be inadequate to make the moving party whole. See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). The mere risk of injury is not sufficient to meet this standard. Rather, the moving party must establish that the harm is imminent and probable. Id.; 11A WRIGHT ET AL., supra, § 2948.1. Harm that may be contained effectively only through immediate injunctive relief is properly deemed "irreparable." Instant Air Freight, 882 F.2d at 801. In the context of violations or threatened violations of restrictive covenants in employment

---

[1] Defendants offer Saloman Smith Barney Inc. v. Vockel, 137 F. Supp. 2d 599 (E.D. Pa. 2000), for the proposition that the court should deny the application for temporary injunctive relief because Wachovia came to this court with unclean hands. In an affidavit, Durham states that Wachovia instructed him to solicit clients from his former employer and assisted with the solicitation. (Doc. 7 ¶¶ 3-4.) However, the paucity of information presented in Durham's affidavit is insufficient to establish the defense of unclean hands.

contracts, "it is well recognized that injunctive relief is necessary . . . . to avoid irreparable harm . . . and to maintain the status quo." <u>Chamberlain</u>, 145 F. Supp. 2d at 625-26; <u>id.</u> at 626 ("When an account executive breaches his employment contract by soliciting his former employer's customers, a nonsolicitation clause requires immediate application to have any effect.  An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done.  The customers cannot be 'unsolicited.'").

In the matter *sub judice*, Wachovia faces irreparable harm in the loss of solicited clients and the use of confidential and proprietary information to solicit former clients.[2]  Further, such harm to its client base and client relationships cannot be remedied by damages alone.  <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano</u>, 85 F. Supp. 2d 491, 497 (E.D. Pa. 2000); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rodger</u>, 75 F. Supp. 2d 375, 381 (M.D. Pa. 1999); <u>John G. Bryant Co. v. Sling Testing & Repair, Inc.</u>, 369 A.2d 1164, 1167 (Pa. 1977). Accordingly, Wachovia has met this element for injunctive relief.

### C.    <u>Balancing of Hardships</u>

Whether granting injunctive relief would result in greater harm than denying it requires an examination of the terms of the proposed injunction, the respective positions of the parties, and some well-educated speculation on the possible effects

---

[2] In his employment contract, Durham acknowledged that "any breach of the foregoing provisions of this Agreement would constitute immediate and irreparable harm to Wachovia."  (<u>See</u> Doc. 1, Ex. B ¶ 6.)

of the injunction.  See Novartis Consumer Health, Inc. v. Johnson & Johnson-

Merck Consumer Pharms. Co., 290 F.3d 578, 596-97 (3d Cir. 2002); Pittsburgh

Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co., 479 F.2d 607,

609-10 (3d Cir. 1973).  If the potential harms to others exceed the potential benefits

to the moving party, injunctive relief should generally be denied.  See Novartis

Consumer Health, 290 F.3d at 596-97.  Essentially, the question is whether the

injunction would do more harm than good.

    In the matter *sub judice*, the court finds that the potential irreparable harm

to Wachovia[3] clearly outweighs any injury to defendants.  The verbiage of

Cashman's agreement does not prohibit him from servicing or selling to *any* clients;

it merely prohibits the use of confidential and proprietary information.  The

verbiage of Durham's agreement does not prohibit him from servicing or selling to

*all* clients, but merely former clients whom he has solicited.  Indeed, any harm to

Durham is self-inflicted.  See Napolitano, 85 F. Supp. 2d at 498; Rodger, 75 F. Supp.

2d at 382.  The injunctive relief can and should be tailored to maintain the status

quo and to enforce the employment agreements at issue.  Likewise, any injunctive

relief would only be temporary and would terminate upon the arbitrator's decision

on permanent injunctive relief under the Code of Arbitration Procedure of the

National Association of Securities Dealers.  See id.  Accordingly, the court finds that

the balancing of hardships weighs in favor of granting injunctive relief.

---

[3] See supra Part II.B.

D.    **Public Interest**

Among the more nebulous concepts of equitable relief is the public interest factor of injunction analysis.  11A WRIGHT ET AL., supra, § 2948.4.  This factor requires the court to look beyond the parties to gauge the injunction's potential effects on the community as a whole.  See Novartis Consumer Health, 290 F.3d at 596-97.  Public policies favoring enforcement of statutory and contractual obligations constitute relevant considerations in this analysis.  See id.  However, specific, tangible effects on third parties should be the focus of the court's determination.  See Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 883-84 (3d Cir. 1997).

In the matter *sub judice*, the court finds that the public interest is served by the issuance of injunctive relief.  Not only would injunctive relief promote the enforcement of contracts, see Napolitano, 85 F. Supp. 2d at 498, but it would also protect clients' confidential information and discourage other employers from inducing the violation of restrictive covenants, see Chamberlain, 145 F. Supp. 2d at 626.

III.   **Conclusion**

The court finds that injunctive relief is warranted.  Wachovia is reasonably likely to succeed on the merits of its case and faces irreparable injury without such relief.  Likewise, the balancing of the hardships weighs in Wachovia's favor and injunctive relief is in the public interest.  Accordingly, the court will grant

temporary injunctive relief, conditioned upon Wachovia's posting of $50,000.00

bond with the court.[4]

      An appropriate order will issue.

                                     /s/ Christopher C. Conner
                                 CHRISTOPHER C. CONNER
                                 United States District Judge

Dated:       September 26, 2006

---

[4] Federal Rule of Civil Procedure 65 mandates as a prerequisite to granting temporary injunctive relief the "giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c).  In maintaining the status quo, defendants will not face significant losses as a result of the proposed injunction.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WACHOVIA SECURITIES, LLC,** | : | **CIVIL ACTION NO. 1:06-CV-1894** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT L. DURHAM and** | : | |
| **WILLIAM R. CASHMAN, III,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 26th day of September, 2006, upon consideration of

plaintiff's motion for a temporary restraining order and preliminary injunction

(Doc. 2), and for the reasons set forth in the accompanying memorandum, it is

hereby ORDERED that:

1. The motion for temporary injunctive relief (Doc. 2) is GRANTED conditioned upon the posting of a bond or appropriate security in the amount of $50,000.00 with the Clerk of Court.

2. Upon the posting of said bond or security, defendants Robert L. Durham and William R. Cashman, III, directly and indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of defendants' current employer, are ENJOINED from:

   a. Using, disclosing, or transmitting for any purpose confidential information[5] contained in the records of Wachovia.

   b. Destroying records or information, if any, defendants removed from Wachovia.

---

[5] For purposes of this order, confidential information is defined as any information derived exclusively from customer lists or other records of Wachovia.

3.      Upon the posting of said bond or security, defendant Robert L.
        Durham, directly and indirectly, and whether alone or in concert with
        others, including any officer, agent, representative, and/or employee of
        defendants' current employer, is ENJOINED from soliciting any
        business from any client whom he served or whose name became
        known to him while in the employ of Wachovia.

4.      Defendants Robert L. Durham and William R. Cashman, III, are
        further ordered to deliver all original records, all computer disks or
        recordings, and all other documents, listings, or other computerized
        tapes or recordings containing customer names, addresses, and other
        account-related information, together will all copies and/or
        reproductions thereof to Wachovia's Reading, Pennsylvania, and to
        purge such materials and documents and information derived
        therefrom from the possession, custody, or control of defendants or
        anyone working with or for defendants and the entity with which they
        are now affiliated, within 24 hours of the posting of appropriate
        security.

5.      This temporary injunction order is binding upon defendants, their
        agents, servants, employer, employees, any entity with which they are
        affiliated, and those persons in active concert or participation with
        defendants who receive actual notice of this order by personal service
        or otherwise.

6.      The parties are directed to proceed with arbitration in accordance
        with Rule 10335 of the Code of Arbitration Procedure of the National
        Association of Securities Dealers.

7.      This order shall remain in full force and effect until completion of the
        arbitration proceedings in accordance with the Code of Arbitration
        Procedure of the National Association of Securities Dealers, unless
        otherwise modified by further proceedings.

8.      Counsel for plaintiff shall effect service of this order upon all affected
        persons/entities as soon as practicable.

                                        __/s/ Christopher C. Conner___
                                        CHRISTOPHER C. CONNER
                                        United States District Judge